This case arises from a declaratory judgment that terminated the sand-and-gravel lease between the parties. That judgment hinges on an incorrect legal theory that neither party presented, and so I'm going to try to focus today on the two primary reasons that we would respectfully request that the court reverse. First reason is the ruling below violated the party presentation principle. The second reason to reverse is the ruling below is just simply incorrect. The ruling is contrary to the plain text of the lease. The ruling is contrary to this court's opinion in Woolley v. Standard Oil, and it's contrary to Williams v. Myers, which is the authoritative treatise in this area. So for all those reasons, we're asking that the court please reverse. Turning to that first issue, the party presentation principle, so the basic rule was most recently emphasized by the U.S. Supreme Court in the United States v. Senegan Smith case, but the as a general matter, courts will only decide questions presented by the parties and typically will not or should not decide questions that are unpresented by the parties. Now, with all credit to the other side, the Senegan Smith case says that the rule is supple, not ironclad, but what we know from Senegan Smith and also from this court's more recent cases is the clearest type of violation of the party presentation principle is when the decision hinges not only on a theory that was unpresented by the parties, but that is actually a contradicts the theory that was actually enhanced by the parties. How does this intersect with our ability to decide the case on anything that's in the record, which is a well-established? So even if you were correct, if the underlying ruling was correct, couldn't we still affirm based upon that reason? Your Honor, at least as far as the contract interpretation, I do think that the court is cabined by the party presentation principle. You don't think that if we believed that it hadn't been about the payments that we couldn't just on our own say, well, this is, you know, it's the correct answer on the lease. And so we don't need to go through all this. And so we're going to just affirm for that reason, skip, we're going to skip all of it and just say, well, what's the answer on the lease? And therefore we should all go home. Why can't we do that? Your Honor, you can do that. You can rule on the summary judgment grounds, but I would urge the court not to and the court should not do that. And that's because the ruling on the notice and cure provision creates, frankly, a real problem in the jurisprudence of the state of Texas, because that legal ruling that says the notice and cure provision does not apply under these circumstances is a real concrete jurisprudential problem for not just mining companies like my client, but also lessors in the same circumstance. And so I'll try to focus on that more later, but the court can, but I respectfully submit should not skip to just deciding this case on the evidence. We really have, would urge the court to fix this issue in terms of the notice and cure ruling. So on the party presentation principle, you know, having laid out the basic premise, the parties agreed from the very inception of the case that their lease could not terminate without notice of a misroyalty payment and an opportunity to cure. I believe at this point the appellees concede that point, but if they don't, we cite five separate examples at pages 18 through 19 of our brief. Do you believe the ruling actually contradicts the stipulation? I do, Your Honor. Is there any case that holds that a ruling that contradicts a stipulation by the parties violates party presentation? Any case in all of American history? Your Honor, the closest case I can think of is the Texas Waste Disposal case that's cited in our brief from this court where it was interpreting a contract, I believe it's footnote six, where it says the parties, I'm paraphrasing here, but the court essentially says we find a particular argument that's advanced by the parties to be inexplicable in light of a particular contract provision, but then the court goes on to say, but we're not going to address that in light of the party presentation principle. But has anyone ever said, court, you erred? You're advancing a novel argument of party presentation, aren't you? Actually, Your Honor, I think it's consistent with the United States v. Enigin-Smith and also the Texas Waste Disposal case from- I didn't say it was inconsistent, but no one's ever held this, that the court can't look at the actual document and make its own determination. Not any more specifically than those cases we've cited. Your Honor, so after the parties had already filed cross motions for summary judgment, the magistrate judge invited the parties to switch positions and invited the parties to take the position that the notice and cure provision did not apply. Both parties filed renewed cross motions for summary judgment. Both parties held fast to their position and said, our lease cannot terminate absent notice of a missed royalty payment and an opportunity to cure. And nevertheless, the magistrate judge ultimately disregarded the point. What if the record shows that factually you did not make payments and you had notice and did not cure? Then what do we do? Your Honor, in that case, in that circumstance, I think you would still, I do think it's critical to fix this incorrect legal argument because I'm worried about it honestly having an impact on the jurisprudence. So I think there needs to be some sort of indication that this legal ruling is incorrect. However, under your set of facts, we affirm on a different ground, which is on the evidence. I think I'm just trying to put some substance on the attitude of the courts to, uh, to proceed to decide the case, uh, despite the violation of the party presentation rule. I personally think that the party presentation rule is powerful medicine, uh, because I think that Justice Ginsburg, who often said is the mother hen of that whole doctrine and the procedures of the court for so many, many years, pushed that with great success because it's a powerful doctrine for a whole host of reasons. And so we, uh, given that, uh, and we are left, if, if, if, if, if we find that in this record, uh, there has, you simply failed to make payments on more than one occasion and that, uh, and you, and you had noticed, then do we, you say we can't conclude the case on that basis? Um, I think under the circumstances that you're describing, I would respectfully submit there should be some sort of indication to say the legal ruling that the notice and cure provision doesn't apply is incorrect, violates the party presentation principle, or is wrong on the merits. However, then I do agree the court can proceed to address the summary judgment evidence. And there really are two routes. The court could, uh, render judgment on the record presented to the court. Of course, we've requested judgment in our favor and Applebees requested judgment in their favor. The only other alternative I would flag that both parties have alternatively requested a remand because the district judge has not taken a first crack at evaluating the evidence on whether notice and cure occurred. What is the basis for the contention that O'Callaghan was required to tender a W-9 before receiving payment? What gave your client the ability to condition payment beyond the terms of the lease? Simply, Your Honor, the, the basic IRS requirement that for us to cut a check, we need to be able to accurately collect the information from the taxpayer and then report the transaction. But as to the particular transaction you're referring to, Your Honor, I'd also point to the lease because that is the check that was originally tendered to Ms. Minarsik in April of 2017. Now, there's some evidence in the record that the check was returned and it's undisputed that Ms. Minarsik had passed away before we tendered the check, unbeknownst to us. And the only thing I'd say to the court on that is the lease specifically contemplates this situation and says that a payment that's tendered is binding even if the recipient passes away. So, in addition to the party presentation principle, the separate independent reason to reverse that I'd like to try to briefly focus on is the magistrate judge's ruling on the notice and cure provision is incorrect. It is inconsistent with the text of the lease. Aren't we actually reviewing the district court's decision and you keep talking about the magistrate judge's ruling, which informs the district court judge decision? You're correct, Your Honor. This is not a consent case. This is a recommendation case. That's absolutely correct, Your Honor. There's an order from the district judge adopting the recommendation and then there's a final declaratory judgment and that's what's up on appeal. I'm simply referring to the recommendation because that's the real sort of guts of the reasoning in this case. That's where all the reasoning is, is in the magistrate. Yeah, we understand. Yes, Your Honor. So, the declaratory judgment is incorrect because it's inconsistent with the text of the lease. And I know the court's familiar with the lease, but it is tab six in our record excerpt. How should we read, notwithstanding the death of lesser or any of them, the payment of royalties when due here under within the time and the manner provided herein shall be binding upon the heirs of lessee? How she would review that? I'm sorry? I'm reading the lease term that I think you were going to point us to and asking you how we should review it. And I'm sorry, Your Honor. I don't understand the question in terms of how to review it. How do you read that term? How does your client read that term differently than the district court does? I mean, the district court did by adopting the magistrate judge. I don't disagree with that. I don't believe the magistrate judge touched on that particular point. Okay. So, you don't believe that that's relevant to this inquiry? No, Your Honor. I do. So, what I was trying to answer before is your question about is there a legal issue with the fact that Ms. Minarsik passed away before we tendered the 2017 payment. And my response is simply the lease contemplates that and addresses that. But with my limited time, what I'm going to try to focus on is the text of the lease is contrary to the ruling in this case. The lease itself is tab 6, but there's really two paragraphs in the lease that decide this case. There's paragraph 2 of the lease that says, subject to other provisions in this lease, the lease will continue so long as there's either production of sand and gravel or payment of advanced royalties as herein provided. That's paragraph 2 of the lease. And then to figure out what herein provided means, you have to look to paragraph 6 of the lease, which is on page 1755 of the record. Paragraph 6 spells out the advanced royalty payments that the lessee is required to pay. And then in the true key sentence that we believe decides this case, the lease says, notwithstanding anything contained in this lease to the contrary, should lessee fail to pay or tender any amount of advanced royalty when due, then lessor shall notify lessee in writing of such failure, and this lease shall not terminate unless and until lessee shall have failed to pay or tender the amount of advanced royalties due within 10 days of receipt of notice. We believe that language in the lease should decide this case, and it certainly indicates that the reasoning below was incorrect. You're claiming that you did make payment within 10 days. You did cure within 10 days. Yes, Your Honor. There is at least two occasions of nonpayment, right? How many were there? The aptly alleges two instances of what they're calling nonpayment. Or failure to pay timely, whatever. Correct. The first one was the payment to Ms. Minarsik we talked about earlier. The second one was in 2018. The payment was paid to Mr. O'Callaghan late. However, there's no notice in the record that would qualify as a legally sufficient notice to start the 10-day clock until December 11th of 2018, and the undisputed evidence is the very next day, Mark Marietta cured and sent checks for both amounts, for 2017 and 2018, out of an abundance of caution to Elman. And specifically on that issue, so page 1841 in the record is Ms. Glaze's declaration. Ms. Glaze is Mark Marietta's in-house counsel. She is the only person who was involved in the communications back and forth between the parties on notice and cure that testified in the summary judgment record. She is the only one who submitted an affidavit or a declaration on the specific issues of how the notice and cure went back and forth. And so I respectfully submit she's a good place to look in the record. In addition to the text of the lease, the conclusion below flatly contradicts this court's opinion in Wooley v. Standard Oil. I do not believe there's any principled way to distinguish the facts of our case on the notice and cure issue from Wooley v. Standard Oil from this court. And we cited that case in our opening brief many, many times, and there's no response at all in the appellee's brief. In addition, the San Antonio Court of Appeals in 1984 in a published case encountered the same set of facts again and specifically relied on this court's opinion in Wooley to decide the facts of the case in our favor. So both those we think are, you know, further bolster our position on the text of the lease. And the last thing I'd add on that issue, the treatise that people use in this area of law commonly authoritatively is this Williams and Myers on oil and gas. Even though this is a sand and gravel case, the same general principles are the same. And this court has cited Williams and Myers many times. And I would just close with this. The treatise says, quote, a notice and demand provision specifically applicable to delay rentals should be given effects by the court, close quote. And the authority that Williams and Myers cites is this court's opinion again in Wooley v. Standard Oil. Unless the court has any questions, I'll reserve the remainder of my comments for rebuttal. Yes. Thank you, Mr. Graham. Thank you. Mr. Deckerman. Good morning, Your Honors. So while it's fresh on our minds, I did check your brief and you don't respond at all to Wooley, which was cited at least three different places in the opening brief. Whenever that happens, my antenna always goes up because it looks like maybe the party has no response. So why don't you give us your response to Wooley? Thank you, Your Honor. I appreciate the opportunity to give our response. The reason we didn't respond to Wooley in our briefing, Your Honors, is that the holding of the Wooley case is simply on a different point than Martin Marietta relies upon it for here. As explained in the Wooley case, prior to, you know, the middle part of the 20th century, Texas courts would regularly strike down reservations, such as savings clauses and notice of care provisions, as repugnant to grants under mineral leases. Strike them entirely. What Wooley stands for and the case that it previously cites, Associated Oil v. Hart, is the beginning of a new doctrine where instead of striking per se any reservations repugnant to grants, instead the court will attempt to read all of the clauses of the lease together and attempt to give effect to all of them. And we don't disagree with that. And that's exactly what the district court did here. The district court read the entire lease, particularly including the habendum clause, which created this contract as a fee simple determinable, and paragraph 6, which provides for delay rentals or advance royalties, I'm sorry, and determined that while the notice of care provision does apply, it doesn't apply to advance royalties before the beginning of mining and production, because if it did, it would completely void the habendum clause itself, transforming the lease from a fee simple determinable into a fee simple with a condition subsequent. Do you want to tell us why the payment wasn't made timely and all of that? Yes. Do you want to address the merits of the case, of the decision? Yes, Your Honor. Before I jump into that, would the court like me to address the party presentation principle or? You may do whatever you'd like, but I'm asking you a question about the merits. Yes, Your Honor. You choose to do what you wish. Thank you. Yes, with respect to the late payments, as laid out in the district court's decision, by my count, eight different payments were made late, contrary to the terms of the lease. In the record on appeal at page 2376, the court found that 2015, 2016, 2017, 2 in 2018, 2019, 2020, and 2021 were all made late. And were any of them cured within the 10 days? I wouldn't want to take a position that any of them were cured, but in our briefing, we cite three cases where they certainly weren't cured after we know that there was a sufficient notice under the lease. Well, it's legitimate for me to ask you whether you think the others were cured. I don't understand why you wouldn't take – either they were or they weren't. What is your position that you can reasonably sustain under the law and the record here? Thank you, Your Honor. I don't have the evidence under the record to assert that the other payments that weren't briefed were not cured within the 10-day notice period. This is the five of the eight? You're not talking about the five of the eight? Correct. You're talking about three of the eight that definitely weren't cured? Yes, Your Honor. I'm just trying to figure out what you are prepared to talk about. Three payments that weren't cured, and you're putting to one side the other five. Yes, Your Honor. So bringing up eight is not helpful if we're really dealing with three? Yes, Your Honor. Under the – if this court were to decide that the district court interpreted the contract incorrectly and that notice of cure applied to the payments, then for our summary judgment briefing in the lower court, we're only moving for summary judgment on the three payments. That's right, Your Honors. And the fact of the matter is we provided them written notice. They responded on three occasions and simply didn't pay within the 10 days. Contrary to Martin Meredith's briefing, there is no requirement under Texas law that all of the particular formalities of notice of cure provisions and contracts be filed – I'm sorry, followed. There's the substantial compliance doctrine and also the actual notice doctrine under Texas law, which provide that if you can prove that the other side has actual notice, which we've amply provided here, that that notice is sufficient. What would you like us to do today specifically? What I would like the court to do today, Your Honors, is to affirm the district court's judgment on the interpretation of the contract, holding that the lease terminated automatically because the payments were not timely made. Do you want to talk about the party presentation? Sure, Your Honor. In response to Martin Meredith's briefing on the party presentation principle, I would simply point out that I believe that their reliance on this principle and this, I don't know how to pronounce this, the Sinning-Smith case is misplaced. As we presented in our brief, in the Sinning-Smith case, which was a criminal matter, the court in that matter sort of took over the case and gave it to a friend of the court counsel to submit their own briefs and their own propositions and decided the case on much larger grounds than were presented by the parties, and that's simply not the case here. Both parties presented a contract to the court and asked the court to construe it. The court did construe it and granted our client exactly the relief that we had requested. Now, it's true that the court granted it on different grounds than we had briefed, but as this court found in the United National Foods case, which Martin Meredith briefed in its reply in support of its appeal, Judge Oldman discussed the party presentation principle, disputing their interpretation of it. Judge Oldman of this court specifically said, if I may quote, we're not 1L moot court judges who are artificially bound by the eight quarters of the party's two briefs. Does anyone think that when a party presents legal question X for decision in a federal court, a federal judge is somehow disabled from reading other material to decide that case? And that's exactly the restriction that Martin Meredith urges on this court in this case. Does the ruling that was made contradict the stipulation? Or does it just not deal with it? The ruling that was made disagrees with Elman's interpretation at that time of the contract. At the time we briefed those motions, Elman took the position that the notice of peer provision did apply. The district court, in interpreting the lease, to be frank, found better law than we had found and had better reasoning and, in our view, correctly interpreted the lease. So, yes, Your Honor, the court did figure it out differently than we had. I'm sorry I don't know this, but was there briefing on the objections to the report that identified all of this and flushed this out fully for the district court? Yes, Your Honor. I believe that Martin Meredith filed objections to the report and recommendations. Did they say that the magistrate judge's ruling had violated party presentation and go into great detail on that? I'm sorry, I don't have them in front of me today. I don't have my iPad. I don't believe so, Your Honor. I believe that the party presentation principle was first raised at this court. I have one other point to discuss that I think is very relevant to this case. And it's, in addition, Your Honor, to not discussing the Wooley case in our briefing, Martin Meredith also faults us for not discussing the Kincaid case. And I think the Kincaid case is a great example, not for what Martin Meredith relies on it for, but for the general background nature of Texas law on mineral leases. In the Kincaid case, the mining company holding the lease was concerned that it may be about to miss a royalty payment on a lease, just like this one, that's a fee symbol determinable. And in that case, the person responsible for making the payments was instructed by her company to get the two checks written out to make the lease payments, rent a plane, and fly to the remote county in Texas so that those lease payments could be timely delivered. En route, she called the bank manager. She was concerned that she might be a little bit late for permission to go to his home personally and deliver the checks to avoid termination of the lease. And what Kincaid then goes on to develop and talk about is whether that satisfied a clause permitting a good faith attempt to pay. And the court found that it did. Here, by contrast, what Martin Marietta would urge this court to do or urges this court to do is to rule contrary to sort of the background assumptions of Texas mineral law and contrary to Woolley that if there is a notice of impure provision in a mineral lease contract, that that notice of impure provision can transform that contract from a fee symbol determinable, which Texas law is very clear that most, if not all, mineral leases are, into a fee symbol with a condition subsequent where the lessor, I'm sorry, the lessee, the mining company, sort of has an option to pay or not depending on whether the lessor provides the notice. I want to ask you about the 2018 letter. Do Blaise's actions requesting documents that she already had create at least a genuine dispute about whether Marietta knew the November 2018 letter was claiming nonpayment? In our view, Your Honor, there's no genuine dispute of material fact that Martin Marietta was on notice that it hadn't made payments. Documents produced in the case and relied upon by Martin Marietta as evidence that it eventually did make payments show that Martin Marietta knew it had not timely made the payments. And by receiving a letter first from the lessors and then from counsel indicating that the lease was terminated, Ms. Blaise, in our view, had all the notice she needed to look into the matter and decide that the payment hadn't been made. Mr. Graham, on a couple of occasions, claimed that if we were to affirm here on the basis of district courts' adopted reasoning that it would, as these are my words, it would do great damage to Texas law in this area. Do you have any response to that? Yes, Your Honor. I believe precisely the opposite. As the Kincaid case shows, under Texas law, mineral companies, mining companies, and oil and gas companies know that you're not to make payments late and that if necessary to make them on time, you rent planes or helicopters and deliver checks or cash to make those payments because the automatic termination of mineral leases has been the reality background of Texas law for over 100 years. Martin Marietta's interpretation of this contract and their argument that because there's a notice and cure provision, which isn't even specifically mentioned in the habendum clause, right, it's mentioned in a separate clause which refers only to royalty payments and is contradicted by a different notice and cure provision at the end of the contract, this provision would sort of transform this common understanding of Texas oil and gas and mineral lease law from one where payments must be timely made to avoid termination to one where payments can be made or not made at the option of the payor, depending on whether a notice was received. If this was just such a surefire way to win this case, why didn't you all think of it first? I asked myself that from time to time myself, Your Honor. I don't know. Part of it was that we believe our evidence and summary judgment was quite strong. There's clear evidence that Martin Marietta was provided written notice that appropriately high-level employees, including Ms. Glaze and I forget the gentleman's name, but the man who was in charge of, you know, running these leases, was corresponding with the lessors, acknowledging that they hadn't been paid and that payments then just simply weren't made for months and that even if the notice and care provision were to apply, which we don't think it does, I think the district court got it right, that shows both actual notice and substantial compliance, and so the lease is terminated. Are there any other questions, Your Honor? All right. Thank you, Mr. Begeleman. Thank you. Mr. Graham for Roboto. Thank you, Your Honor. Three points briefly. Abilene's counsel quoted the dissent in the United Foods v. NLRB case, but he's overlooking that the majority specifically rejected the point that the dissent made at pinpoint side 546, and that included a majority opinion, including Judge Higginbotham. Judge Elrod, you asked whether we raise the party presentation principle in our objections to the report recommendation. So our objections are at page 2379 of the record, and I want to be careful how I phrase this because we were not calling it the party presentation principle at the time, but the whole thrust of our objection was, wait a minute, this conclusion flatly contradicts the question we presented to the parties, to the court. So what I respectfully submit is if you look at 2379, we certainly raised and flagged the issue for the district judge to put that on his radar. Next, Judge Elrod, when you asked Abilene's counsel, what do you want us to do in this case, what's the ultimate ruling, the request was to affirm the ruling on the summary judgment on the notice and cure provision. And then, Your Honor, later I asked if it was so obvious, why did they make the argument? It's because the lease is directly contrary to the court's ruling on the notice and cure provision. So Abilene couldn't make the argument because it conflicts with the lease, and that's why we're so strident about it. But I'd also stress Abilene's own statement of undisputed material facts on the summary judgment, which is in the record at 1950, still says, quote, the gravel lease does not terminate unless lessee fails to pay or tender the amount of advanced royalties due within 10 days following the lessee's receipt of notice from lessor. That is their existing current live pleading in support of their renewed motion for cross motion for summary judgment. The only final comment I'd make in closing. You agree, I assume, that if there is notice and no payment within 10 days that the lease would terminate? I do, Your Honor. I don't believe the evidence supports that's what happened, but I agree with your general proposition. Let me ask you a question. Let me give you a statement and just tell me if this is correct or not. Marietta did not pay or tender royalties to the lessor on April 4th or April 16th because Marietta did send a payment to an Archie on April 12th. It's undisputed that Willow had passed away and for errors never received the payment. On May the 15th, Callahan emailed Marietta asking to please send the 2017 royalty payment to his attention and address. They argue that this email was not sufficient notice under the terms of the gravel lease. The exit law is clear that notice substantially complies. Is that an accurate recitation or not? Yes, Your Honor. As to the 2017 dispute over the payment, the only thing I would add is at the time, the people communicating with Mark Marietta never took the position they were terminating the lease, never took the position that was a notice of termination. It wasn't until the communications in 2018 from Ellman's counsel that they started claiming there had been a termination. It's on December 11th that Ms. Glaze testifies in her declaration. She first realizes what they're alleging, and on December 12th, we cure. So Mark Marietta double-paid. We went back and cut checks to Ellman for both the 2017 payment and the 2018 payment, even though they had been previously tendered. So that's the context of what happened. You're just giving the full context to that statement. Thank you. Sometimes we have cases where the lawyers will say in their briefs, our contract is ambiguous, and both sides will sometimes say that. And we will sometimes say, nuh-uh, it's not ambiguous, and we're going to decide it on the specific terms of the contract, and so we're not going to decide it on the reasons that you're giving with all of your extraneous evidence or custom in the industry or whatever. Why isn't that analogous to what is happening here? And if the parties had stipulated that it was ambiguous rather than just argued it in their brief, would you say that bound us to not say it was not ambiguous? In your hypothetical, Your Honor, I would not say that that binds you. I don't think that binds the district court in the hypothetical you're describing because in the hypothetical you're describing, I think the parties have presented to the court to say, here's our contract. The question presented is, is it ambiguous or unambiguous? We think it's— No, that's not the question presented. They're both saying it's ambiguous, but our interpretation is the correct one. In that case, Your Honor, if the parties truly stipulated and said our contract's unambiguous— It is ambiguous. They both say it's ambiguous, and the court routine often says, no, you're wrong. It's not ambiguous. We have many cases where we've done that, where we've said, even when the parties say it's both ambiguous, we've said it's not ambiguous. My view of the party presentation principle is the proper course would be if the parties say our contract's unambiguous and we're presenting to the court, please construe paragraph 6 or whatever, I think the court should confine itself to the paragraph that's presented by the parties consistent with the party presentation principle. Thank you. Thank you. Thank you, Mr. Graham. Your case and all of today's cases,